UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MANAS KANUNGO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GENEDX HOLDINGS CORP., KATHERINE STUELAND, and KEVIN FEELEY, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **July 28, 2026** |

Plaintiff Manas Kanungo ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of (a) regulatory filings made by GeneDx Holdings Corp. ("GeneDx"); (b) press releases, presentations, and media reports issued by and disseminated by GeneDx; (c) analyst and media reports concerning GeneDx; and (d) other public information regarding the Company.

## INTRODUCTION

1.      This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of GeneDx common stock between April 16, 2025 and May 4, 2026, inclusive (the "Class Period").

2.      The claims asserted herein are alleged against GeneDx and certain of GeneDx's senior executives, and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder (hereinafter referred to as the "Exchange Act claims").

3.     GeneDx is a genomics company that provides genetic testing services for diagnosing pediatric and rare diseases.

4.     On April 16, 2025, GeneDx announced an agreement to acquire Fabric Genomics ("Fabric"), an Oakland, California-based firm focused on AI-driven genomic interpretation in a deal worth up to $51 million. Under the terms of that deal, GeneDx would pay up to $33 million in cash up front, with a total consideration of up to $51 million, including payments linked to milestones. The acquisition was completed on May 5, 2025.

5.     At the time of the announcement of the Fabric acquisition, GeneDx stated in its press release that the acquisition would expand GeneDx's addressable market with multiple scalable revenue streams. Additionally, GeneDx stated that "Fabric Genomics' software transforms static data into a dynamic, recurring revenue-generating platform—driving growth through software margins and high-leverage interpretation services across geographies and clinical use cases."

6.     When GeneDx announced that the Fabric acquisition had been completed, GeneDx CEO Katherine Stueland ("Stueland") repeated GeneDx's prior statement that the acquisition would "unlock[ ] recurring software-based revenue streams through Fabric's interpretation as-a-service model."

7.     According to GeneDx's last Annual Report on Form 10-K, which was filed on February 23, 2026, GeneDx completed the acquisition of Fabric for total consideration of $36.5 million, which included $3.4 million in contingent consideration. GeneDx also noted a net increase of $0.6 million in goodwill.

8.     Pre-market on January 12, 2026, Defendants issued a press release reporting full year ("FY") 2025 revenue of $427 million and Q4 2025 revenue of $121 million. While the 2025

revenue results were in line with estimates, they were not in line with the previous four quarters where GeneDx beat estimates by an average of 14%. Likewise, GeneDx's 2026 revenue guidance of $540 to $555 million signaled year-over-year revenue growth of 26% to 30%, down from year-over-year revenue growth of 41% in 2025 and 56% in 2024. On this news, GeneDx shares fell from the January 9, 2026 closing price of $135.38 per share to close at $119.24 per share on January 12, 2026, a decline of $16.14 or 11.92%.

9.      Following the close of trading on January 12, 2026, Defendants filed the press release with the U.S. Securities and Exchange Commission ("SEC") on Form 8-K, causing GeneDx shares to continue to fall and to close at $109.84 on January 13, 2026, down $9.40 from the January 12, 2026 closing price of $119.24 per share, a 7.88% decline.

10.      After hours on May 4, 2026, GeneDx reported its financial earnings results for the first quarter of fiscal year 2026, revealing that it had missed its revenue estimates for both its exome and genome lines, and lowering its guidance for FY revenue to $475 – $490 million, down from $540 – $555 million.  It was also revealed that GeneDx had written off $31.2 million, as an impairment loss directly attributable to Fabric.

11.      Prior to this news, GeneDx shares had closed at $67.93 per share on May 4, 2026. The after-hours disclosures caused GeneDx shares to decline precipitously in after-hours trading, dropping to a post-close low of $35.96 per share on May 4, 2026. GeneDx shares opened at $36.94 per share on May 5, 2026 and continued to fall throughout the trading day, closing at $34.51 per share. In total, the price of GeneDx stock declined by $33.42 or 49.20% from the May 4, 2026 close to the May 5, 2026 close.

12.      While GeneDx's main segments continued to grow in 2025, taking GeneDx's stock price to a high closing price of $167.51 during the Class Period, Fabric failed to meet its goals of

3

"driving growth" and instead has dragged GeneDx's financials down. Moreover, as Canaccord Genuity analyst Kyle Mikson wrote in a report issued after GeneDx's May 4, 2026 disclosures (with emphasis added): "GeneDx's 1Q26 results appeared to reflect the reversal of important growth drivers (e.g., ASP expansion, non-core business). ... We believe it is *alarming* that the problems appears more systemic in nature, as it is unclear when the company's core (whole exome sequencing and whole genome sequencing) business will recover to historical growth rates."

13. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of GeneDx stock, Plaintiff and other Class members have suffered significant losses and damages.

14. The claims against Defendants arise from their misrepresentations and omissions regarding GeneDx's statements regarding the impact of Fabric on the overall business of GeneDx. Throughout the Class period, GeneDx repeatedly made statements that would have caused the average investor to believe that the Fabric acquisition would improve GeneDx's financials and create efficiencies between it and GeneDx's core business. These statements include such statements such as: "There is room to run in terms of reducing COGS in the future by combining the best of capability between GeneDx and Fabric as we lean into the best possible algorithms to optimize dry lab processes." These and similar statements made throughout the Class Period were false. In truth, Defendants knew of, or recklessly disregarded, significant problems in Fabric's viability that would negatively impact GeneDx's overall business and operations. As a result, GeneDx's statements concerning its business, operations, and prospects lacked a reasonable factual basis, and shares of GeneDx common stock traded at artificially inflated prices during the Class Period.

4

## JURISDICTION AND VENUE

15.    The Exchange Act claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

17.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), as certain of the events or omissions giving rise to the claim arose in this District, including the dissemination of the statements alleged to be materially false and misleading into this District, and Defendant GeneDx transacts significant business in this District and its principal offices are located at 333 Ludlow Street, North Tower, 6th Floor, Stamford, CT 06902 and are located within this District.

18.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### Plaintiff

19.    Plaintiff, as set forth in the accompanying certification filed herewith as Exhibit 1, purchased or otherwise acquired shares of GeneDx common stock at inflated prices during the Class Period and suffered damages as a result of the federal securities law violations and false and misleading statements and/or material omissions alleged herein.

**Defendants**

20.     Defendant GeneDx is a holding company and specializes in genomic diagnostics. GeneDx's principal offices are located at 333 Ludlow Street, North Tower, 6th Floor, Stamford, CT 06902. GeneDx common stock trades on the National Association of Securities Dealers Automated Quotations Exchange ("NASDAQ") under the ticker symbol "WGS." As of May 20, 2026, GeneDx had over 29.69 million shares of common stock outstanding, owned by hundreds or thousands of investors.

21.     Defendant Katherine Stueland ("Stueland") is, and was at all relevant times, CEO of GeneDx.

22.     Defendant Kevin Feeley ("Feeley") is, and was at all relevant times, CFO of GeneDx.

23.     Defendants Stueland and Feeley are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with GeneDx, possessed the power and authority to control the contents of GeneDx's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants were provided with copies of GeneDx's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

24.     GeneDx, which trades on the NASDAQ exchange under the ticker WGS, is an American biotechnology company specializing in genomic diagnostics, with a focus on whole genome sequencing and whole exome sequencing for the diagnosis of rare and inherited disorders.

25.     On April 16, 2025, GeneDx announced an agreement to acquire Fabric Genomics, an Oakland, California-based firm focused on AI-driven genomic interpretation in a deal worth up to $51 million. Under the terms of that deal, GeneDx would pay up to $33 million in cash up front, with a total consideration of up to $51 million, including payments linked to milestones. The acquisition was completed on May 5, 2025.

26.     According to GeneDx's last Annual Report filed on February 23, 2026, GeneDx completed the acquisition of Fabric for total consideration of $36.5 million, which included $3.4 million in contingent consideration. GeneDx also noted a net increase of $0.6 million in goodwill.

27.     From FY 2023 to FY 2025, GeneDx's reported gross margins had continually increased. For FY 2023 gross margins were reported at 45%, for FY 2024 gross margins were reported at 65%, and for FY 2025 gross margins continued to grow to a reported 71%.

28.     On January 12, 2026, GeneDx announced its preliminary 2025 financial results and provided 2026 guidance in a press release. GeneDx expected FY 2026 revenues between $540 and $555 million.

## SUBSTANTIVE ALLEGATIONS

29.     The Class Period begins on April 16, 2025, when GeneDx announced the acquisition of Fabric. At the time of the announcement of the Fabric acquisition, GeneDx stated in its press release that the acquisition would expand GeneDx's addressable market with multiple scalable revenue streams. Additionally, GeneDx stated that "Fabric Genomics' software transforms

static data into a dynamic, recurring revenue-generating platform—driving growth through software margins and high-leverage interpretation services across geographies and clinical use cases."

30. When GeneDx announced that the Fabric acquisition had been completed, CEO Stueland repeated GeneDx's prior statement that the acquisition would "unlock[ ] recurring software-based revenue streams through Fabric's interpretation as-a-service model."

31. During the Q2 2025 Earnings Call on July 29, 2025, CEO Stueland in her opening remarks stated with regards to Fabric that "[o]ur lead will only continue to expand as we integrate Fabric Genomics and its proprietary algorithms into the core platform, further strengthening our competitive edge and positioning us for unprecedented scale."

32. During that same call, CFO Feeley stated that "there was room to run in terms of reducing COGS in the future by combining the best of capability between GeneDx and Fabric as we lean into the best possible algorithms to optimize dry lab processes."

33. Later during the Q+A portion of the Q2 2025 Earnings Call, CEO Stueland stated with regards to the acquisition:

> Fabric, we're really happy that we acquired it. So just out of the gate it's a fantastic team. . . So we're excited about it. They're on track with our plan this year in terms of their revenues, their gross margins. The teams have had a fantastic time collaborating and really starting to work together. So we're excited about it. And again, as we think about the potential for where Fabric can really help us drive the business, we've begun hiring sales reps for the international opportunity. So we're excited about the potential to start driving utilization of Fabric via GeneDx in international markets. It's also a really important asset as we think about how to solve newborn screening and ensure that patients have standardized results, whether a baby is born in London or in Los Angeles. So we're really excited about the future potential within the capabilities of GeneDx. So it's off to a great start.

34. During GeneDx's Q3 2025 Earnings Call, on October 28, 2025, CFO Feeley discussed how GeneDx's adjusted gross margin had grown to 74%, which was driven by a

8

favorable mix shift. Additionally, later during that call he mentioned that the average reimbursement rate was over $3,800, and that potentially the rate could bounce down in the magnitude of about $100.

35. The statements set forth above in ¶¶ 28-34 were materially false and misleading, and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, Defendants knew of, or recklessly disregarded issues with Fabric and misled investors regarding the actual quality of the acquisition. As a result, the statements concerning GeneDx's business, operations, and prospects lacked a reasonable factual basis.

**The Truth Was Partially Revealed**

36. The truth began to emerge pre-market on January 12, 2026, when Defendants issued a press release through *Business Wire* which reported GeneDx's preliminary Q4 and FY 2025 results and provided 2026 guidance. GeneDx reported FY 2025 revenue of $427 million, Q4 2025 revenue of $121 million, and adjusted gross margins of 71%. While the 2025 revenue results were in line with estimates, they were not in line with the previous four quarters where GeneDx beat estimates by an average of 14%. GeneDx's 2026 revenue guidance of $540 to $555 million signaled year-over-year revenue growth of 26% to 30%, down from year-over-year revenue growth of 41% in 2025 and 56% in 2024. Finally, GeneDx forecast adjusted gross margins would be at least 70% in 2026. All told, the January 12, 2026 preliminary earnings release signaled to the market that GeneDx's growth was slowing.

37. On this news, GeneDx shares fell from the January 9, 2026 closing price of $135.38 per share to close at $119.24 per share on January 12, 2026, a decline of $16.14 or 11.92%.

38.     Following the close of trading on January 12, 2026, Defendants filed the press release with the SEC on Form 8-K, causing further declines in the price of GeneDx shares, which closed at $109.84 on January 13, 2026, down $9.40 from the January 12, 2026 closing price of $119.24 per share, a decline of 7.88%.

39.     Despite the foregoing declines in GeneDx's stock price, GeneDx's common stock continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding, *inter alia*, issues with Fabric and the actual quality of the acquisition.

40.     For example, during an industry call on January 14, 2026, CEO Stueland sought to assuage investor concern regarding slowing growth by touting how Fabric would help GeneDx continue to scale:

> So I want to take a bit about -- to talk about how we intend to enable precision medicine to scale. And part of this includes having a global footprint. We acquired Fabric Genomics last year, which allows us to be able to take our interpretation platform, pour-in Infinity, our database, and then wherever there is a sequencer being bought anywhere in the world, we can put that interpretation platform and that centralized intelligence on top of it to be able to help patients back from where we are here in the U.S.
>
> And so we're going to continue to drive scale. We're going to continue to harness more and more patients and more diverse patients from around the world to continue to infuse Infinity, influence the way that these conditions are diagnosed, and ultimately get to a place where we are screening every baby at birth.

41.     During that same call, CEO Stueland reiterated GeneDx's financial projections, with GeneDx guiding to $540 million to $555 million in revenue, with growth in revenue and volume of 33% to 35%, and adjusted gross margins of at least 70%.

42.     During GeneDx's Q4 2025 Earnings Call on February 23, 2026, CFO Feeley discussed the quarter's financial results, and reported growth in revenue and in volume. However, his statements discussing mix dynamics now contrasted his statements from the prior quarter.

Previously during the Q3 2025 Earnings Call, CFO Feeley noted that GeneDx's adjusted gross margin had grown to 74% driven by favorable mix shift. However, during the Q4 2025 Earnings Call, CFO Feeley noted that mix dynamics had fluctuated some in the fourth quarter, and further noted that the average reimbursement rate for the quarter was approximately $3,750, Nevertheless, he stated that "the long-term trend is up and durable."

43.     Later during that call, CFO Feeley reiterated GeneDx's financial prospects and stated that:

> We're confident in our plan to deliver. We're expecting adjusted gross margin at approximately 70%, which takes mix shift dynamics into consideration. Despite a heavy investment cycle, we expect adjusted net income positive for the full year and each individual quarter. The first quarter of 2026, in particular, will be close to breakeven as we deliberately prioritize market capture over near-term margin optimization.

44.     During the Q+A portion of the Q4 2025 Earnings Call, CFO Feeley, in response to a question about gross margins, stated that GeneDx was well-equipped to optimize genome cost, reimbursement, and "invariably, genome COGS will be coming down as -- I mean, we'd expect them to as the utilization ramp increases" and "What we've taken is a fairly conservative view to gross margin in terms of the guide."

45.     The statements set forth above in ¶¶ 36 and 40-44 were materially false and misleading, and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, Defendants knew of, or recklessly disregarded issues with Fabric and misled investors regarding the actual quality of the acquisition. As a result, the statements concerning GeneDx's business, operations, and prospects lacked a reasonable factual basis.

11

**The Truth Continued To Emerge**

46.    The truth continued to emerge after hours on May 4, 2026, when GeneDx disclosed that the Fabric acquisition had not been as fruitful as had been initially planned and that the negative impact of the Fabric acquisition had carried over adversely to GeneDx's overall business and operations.

47.    During the after-hours Q1 2026 Earnings Call, CEO Stueland admitted that it had become increasingly clear that Fabric was best suited only for international markets, that GeneDx had much left to do in order to fully integrate Fabric into GeneDx, and that GeneDx was lowering its expectations for revenue contribution in 2026. It was later revealed during this call that GeneDx had taken an impairment charge for Fabric, and that it had written down $31.3 million in goodwill and other Fabric intangible assets.

48.    CEO Stueland also announced on the May 4, 2026 call that GeneDx's projected earnings would be lower than expected, and reduced GeneDx's 2026 adjusted gross margin projections to approximately 70%.

49.    During the same call, CFO Feeley announced that the blended ARR was less than previously disclosed and "came in approximately $200 below expectations." He blamed the drop as a result of product mix shifts within the exome and genome portfolio, and also blamed an increase in Genome COGS. GeneDx's blended average reimbursement rate was approximately $3,300, down from $3,800 only two quarters before.

50.    Further, GeneDx's after-hours earnings release, Form 10-Q, and earnings call reported that GeneDx had experienced a drop in its adjusted gross margin, which went from 74% to 69%, and that it was reducing its projected earnings from $540-$555 million to $475 – $490

12

million, a 15% decline. It was also revealed that GeneDx had written off $31.2 million, as an impairment loss directly attributable to Fabric.

51.     Prior to this news, GeneDx shares closed at $67.93 per share on May 4, 2026. The after-hours earnings release, Form 10-Q, and earnings call caused GeneDx shares to decline precipitously in after hours trading, dropping to a post-close low of $35.96 per share. GeneDx shares opened down, at $36.94 per share, on May 5, 2026 and continued to fall throughout the trading day, closing at $34.51 per share.  All told, as a result of the disclosures, the price of GeneDx stock declined by $33.42 or 49.20% by the close of the next trading day.

## LOSS CAUSATION

52.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

53.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of GeneDx common stock and operated as a fraud or deceit on the Class (defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of GeneDx common stock declined significantly. Because Plaintiff and other members of the Class purchased or otherwise acquired GeneDx common stock during the Class Period, they have suffered economic loss, i.e., damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired GeneDx

13

common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of GeneDx and their families and affiliates.

55.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of May 20, 2026, GeneDx had over 29.69 million shares of common stock outstanding, owned by thousands of investors.

56.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a)     Whether Defendants violated the Exchange Act;

b)     Whether Defendants misrepresented and/or omitted material facts;

c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

f)     Whether Defendants' conduct impacted the price of GeneDx common stock;

g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

14

     h)     The extent of damages sustained by Class members and the appropriate measure of damages.

57.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

58.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

60.     To the extent that any of the alleged false statements described in this Complaint were forward-looking, GeneDx's "Safe Harbor" warnings accompanying any purportedly forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

61.     To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false or misleading forward-looking statements because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of GeneDx who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any

15

of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

62.    At all relevant times, the market for GeneDx common stock was an efficient market for the following reasons, among others:

a)    GeneDx common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)    As a regulated issuer, GeneDx filed periodic public reports with the SEC and the NASDAQ;

c)    GeneDx regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d)    GeneDx was followed by securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

63.    As a result of the foregoing, the market for GeneDx common stock promptly digested current information regarding GeneDx from all publicly available sources and reflected such information in the price of GeneDx common stock. Under these circumstances, all those who

16

purchased or otherwise acquired GeneDx common stock during the Class Period suffered similar injury by doing so at artificially inflated prices and the presumption of reliance applies.

64. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding GeneDx's business and operations—information that was required to be disclosed—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of compliance with government regulations and billing practices, that requirement is satisfied here.

## CLAIMS FOR RELIEF

65. The claims set forth below, pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, sound in fraud and are based on knowing or reckless misconduct by GeneDx and the Individual Defendants (collectively, the "Section 10(b) Defendants"). These claims are independent of any other claims asserted in this Complaint and the allegations of fraud pertaining to these claims under Exchange Act and SEC Rule 10b-5 do not apply in any way to the other claims for relief asserted herein.

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against GeneDx and the Individual Defendants**

66. Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

17

67. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase or otherwise acquire GeneDx common stock at artificially inflated prices.

68. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired GeneDx common stock in an effort to maintain artificially high market prices for GeneDx common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

69. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about GeneDx's financial well-being, operations, and prospects.

70. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal GeneDx's true condition from the investing public and to support the artificially inflated prices of GeneDx common stock.

18

72.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for GeneDx common stock. Plaintiff and the Class would not have purchased or otherwise acquired GeneDx common stock at the prices they paid, or at all, had they been aware that the market prices for GeneDx common stock had been artificially inflated by Defendants' fraudulent course of conduct.

73.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases or other acquisitions of GeneDx common stock during the Class Period.

74.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

75.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

76.     The Individual Defendants acted as controlling persons of GeneDx within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of GeneDx's operations, direct involvement in the day-today operations of GeneDx, and/or intimate knowledge of GeneDx's actual performance, and their power to control public statements about GeneDx, the Individual Defendants had the power and ability to control the actions of GeneDx and its employees. By reason of this conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

19

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 28, 2026                          Respectfully submitted,

                                              POMERANTZ LLP

                                              */s/ Matthew L. Tuccillo*
                                              Matthew L. Tuccillo (Bar No. ct28411)
                                              Jeremy A. Lieberman
                                              (*pro hac vice* application forthcoming)
                                              J. Alexander Hood II
                                              (*pro hac vice* application forthcoming)
                                              600 Third Avenue, 20th Floor
                                              New York, NY 10016
                                              Telephone: (212) 661-1100
                                              Facsimile: (917) 463-1044
                                              mltuccillo@pomlaw.com
                                              jalieberman@pomlaw.com
                                              ahood@pomlaw.com

                                              *Attorneys for Plaintiff*